IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHAWN W. McDIFFETT,

    **Plaintiffs,**

    v.                                                     CASE NO. 17-3053-SAC-DJW

DARRELL FROMM, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE**

Plaintiff Shawn W. McDiffett is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this case should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff bring this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis*. Although Plaintiff is currently incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"), the events giving rise to his Complaint took place during his incarceration at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). On August 25, 2017, the Court entered an Order (Doc. 6) finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate EDCF officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). The Court ordered the officials responsible for the operation of EDCF to conduct a review and submit a written *Martinez* report.

"The purpose of a Martinez report is simply to give the trial court sufficient information for the orderly consideration of issues." *Davis v. McKune*, 16 F.3d 415 (Table), 1994 WL 7106, *1 (10th Cir. 1994) (unpublished). "A *Martinez* report is often necessary in pro se cases such as this to develop a record sufficient for the trial judge to ascertain whether there are any factual or legal bases for the prisoner's claims." *Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1202 (D. Kan. 2008) (citing *Hall*, 935 F.2d at 1109). "Although the district court may consider the report in dismissing a claim, it may not resolve disputed issues of material fact by simply accepting the reports factual findings when they conflict with those in the pleadings." *Nickelberry v. Pharaoh*, 221 F.3d 1352 (Table), 2000 WL 985665, at *1 (10th Cir. 2000) (unpublished) (citing *Hall,* 935 F.2d at 1109). "Therefore, a prisoner need only present sufficient information to contest a fact in the *Martinez* report in order to prevent dismissal on that ground." *Nickelberry*, 2000 WL 985665, at *1. The *Martinez* Report was filed on November 27, 2017 (Docs. 13, 16.), and the Court is now ready to screen Plaintiff's Complaint.

Plaintiff alleges that when he was transferred to EDCF on November 23, 2016, he notified "Nurse Jane Doe" of his various allergies, including peanut butter, "which it appeared she recorded." Plaintiff alleges that Nurse Jane Doe was acting bizarre and appeared to be having a mental breakdown. After Plaintiff was assigned to his cell, "he advised of [his] diet being a regular diet with allergy to peanut butter." Despite the use of a special-colored food tray with the allergy noted, Plaintiff still encountered problems with the handling and delivery of his food tray. Some days there would be peanut butter on his tray and other days "staff" would serve him a vegetarian or high-protein tray. On one occasion "the officer" brought Plaintiff a tray containing peanut butter and stated to Plaintiff that although the tray contained peanut butter, it was not on his food. When Plaintiff explained to the officer that Plaintiff's tray should

contain a meat/protein substitute and should not be prepared or handled around peanut butter, Plaintiff's tray was returned to the kitchen by Sgt. Tillery.  When the tray was returned to Plaintiff a hard-boiled egg had been added to the tray, but the peanut butter was still on the tray. Officer Tillery then put the tray on his desk, attempted to scrape off the peanut butter with a spork, and returned the tray to Plaintiff.  Plaintiff washed off the hard-boiled egg before eating it. Officer Tillery advised Plaintiff that he noted this in the Food Service Evaluator that goes to the deputy warden.

Plaintiff alleges that on 17 out of 39 days, his meal tray was incorrectly prepared, handled or delivered to Plaintiff.  On January 8, 2017, Plaintiff suffered from his "first" allergic reaction while eating his breakfast.  Plaintiff's noticed it was becoming difficult to breathe through his nasal passageway, his face began to itch, and his eyebrows and lips started to swell.  Plaintiff knew he was "having a mild reaction."  Plaintiff yelled out of his cell to CO Smalley and asked if peanut butter was on the tray that morning.  She responded that peanut butter was not on regular trays but that it was on the vegetarian trays.  Upon inspection of his food tray, he discovered peanut butter smeared on the inside of the food slot and along the outside edges of the tray. CO Smalley stayed at Plaintiff's door to make sure he "would not go into shock."  Plaintiff did not go into shock, but he had a "mild reaction."  Sgt. Tillery and CO Smalley assured Plaintiff that the incident would go into the Food Service Evaluation for January 8, 2017.

On January 9, 2017, Mr. Randolph stated that he had already verified Plaintiff's allergy, sent a memo to all cell house staff, and contacted Aramark Food Service Director Darrell Fromm and advised him that he needed to take action to prevent such from happening again.  On January 12, 2017, Mr. Fromm answered Plaintiff's grievance, indicating that they had spoken to staff and the situation should be fixed.  Despite that assurance, on January 23, 2017, Plaintiff was

served a tray containing peanut butter, and Aramark had to provide Plaintiff with another food tray.

On January 24, 2017, Plaintiff spoke with medical staff "in an attempt to properly document [his] allergy to peanuts, and to become aware of the intervention procedure should the need arise and to ensure that all cell house staff were made aware." Plaintiff was told that the emergency medication is kept in the ER Bag in the clinic, and if there is a medical emergency the response nurse can call for the ER Bag. Plaintiff fears there would be a delay in treatment if he suffers another allergic reaction.

Plaintiff alleges that all facility departments, including Corizon, Aramark and EDCF Administrative Staff, were put on notice and demonstrated deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Plaintiff names multiple EDCF, Aramark and Corizon staff as defendants. Plaintiff seeks a declaratory judgment, compensatory damages, nominal damages and punitive damages.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v.*

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

Plaintiff alleges that Defendants demonstrated deliberate indifference to his serious medical needs in violation of the Eighth Amendment. A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).

Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Prisons must provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980). Plaintiff's allegation that he suffered a slight allergic reaction on one occasion fails to allege a that he is "incarcerated under conditions posing a substantial risk of serious harm." Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of

exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted). Although Plaintiff alleges that on 17 out of 39 days, his meal tray was incorrectly prepared, handled or delivered to Plaintiff, he states only two instances where peanut butter was present on his tray. Only one of those instances resulted in Plaintiff suffering a "mild reaction."

Plaintiff has also failed to allege "deliberate indifference" by any defendant. Plaintiff alleges no facts showing that any particular defendant both knew of and disregarded an excessive risk to his health or safety. Plaintiff's claims at best suggest negligence. Plaintiff's claims are subject to dismissal for failure to state a claim of cruel and unusual punishment.

## IV.  Request for Directives

Plaintiff has filed a Request for Directives and/or Order to Defendants' Legal Counsel (Doc. 18). Plaintiff states that he received the *Martinez* Report in a plain white mailing envelope, without the proper markings indicating it is legal mail or legal material. Plaintiff alleges the envelope had a post-it note stating "UT Legal Copies." Plaintiff alleges that the envelope had been opened, taped shut, and then opened again before it was delivered to Plaintiff. Plaintiff also takes issue with the fact that KDOC's legal counsel has not entered an appearance in this case. Plaintiff claims he does not know whether counsel represents the KDOC or some of the defendants in this case. Plaintiff seeks sanctions against counsel for the KDOC and asks the Court to order her to provide proof of her credentials and to enter an appearance in this case indicating which defendants she represents.

Plaintiff's issues with his legal mail should be addressed through the grievance procedures prior to raising the issue before the Court. At this point in the case, the Court is screening Plaintiff's Complaint and has not ordered the Defendants to be served. KDOC was entered on the docket in this case as an interested party for the limited purpose of preparing the *Martinez* Report. Thus, KDOC is the only party represented at this time, as reflected in counsel's motion at Doc. 7 where she indicates she is representing KDOC. Plaintiff's request for sanctions is denied.

## V. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper Amended Complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff is given time to file a complete and proper Amended Complaint in which he (1) shows he has exhausted administrative remedies for all claims alleged; (2) raises only properly joined claims and defendants; (3) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (4) alleges sufficient facts to show personal participation by each named defendant.

---

[1] In order to add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (17-3053-SAC) at the top of the first page of his Amended Complaint and he must name every defendant in the caption of the Amended Complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

If Plaintiff does not file an Amended Complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Amended Complaint.

Plaintiff filed a notice (Doc. 17) requesting access to sealed documents filed in this case, in particular the exhibit to the *Martinez* report at Doc. 16.  The Court's November 28, 2017 Order at Doc. 14 directed the KDOC to provide Plaintiff with a copy of the sealed documents for his review.  If Plaintiff has not had sufficient time to review the sealed document prior to the deadline for showing cause or filing an amended complaint as set forth in this Order, Plaintiff may request an extension of time.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **January 5, 2018,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **January 5, 2018**, in which to file a complete and proper Amended Complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Directives and/or Order to Defendants' Legal Counsel (Doc. 18) is **denied.**

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated in Topeka, Kansas, on this 5th day of December, 2017.**

<u>s/ Sam A. Crow</u>
Sam A. Crow
U.S. Senior District Judge